# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MILTON ROMAN AND ANTONIO JOHNSON, | : | CIVIL NO: 3:15-CV-02247 |
| | : | |
| Plaintiffs, | : | |
| | : | (Judge Conaboy) |
| v. | : | |
| | : | |
| FEDERAL BUREAU OF PRISONS, *et al.*, | : | (Magistrate Judge Schwab) |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

Presently before the Court is the Defendants' motion (*doc. 10*) to dismiss, or, in the alternative, motion for summary judgment. For the reasons that follow, we recommend that the Defendants' motion, treated herein as a motion for summary judgment, be granted.

### II. Background.

On November 24, 2015, the plaintiffs, Milton Roman ("Roman") and Antonio Johnson ("Johnson") (collectively, the "Plaintiffs"), commenced this counseled action pursuant to the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* (the "RFRA"),[1] by filing a complaint against the following two

---

[1] *See* 42 U.S.C. § 2000bb–1 (providing that the "Government shall not substantially burden a person's exercise of religion [unless] it demonstrates that

defendants: (1) the Federal Bureau of Prisons ("BOP"), an agency of the United States Department of Justice, and (2) R.A. Purdue, the warden of the Federal Correctional Institution in Minersville, Pennsylvania ("FCI-Schuylkill") (collectively, the "Defendants"). *Doc. 1* at ¶¶ 3, 9-10, 11-12.   According to the complaint, FCI-Schuylkill, on or about November 5, 2014, adopted Institution Supplement SCH 536.09H, Religious Beliefs and Practices (hereinafter, "Policy H"). *Doc. 1* at ¶ 2. The Plaintiffs, who are inmates incarcerated at FCI-Schuylkill, claim that this policy, which has been enforced against them, violates the RFRA because it unlawfully imposes a substantial burden on their free exercise of religion. *Id.* at ¶¶ 3, 23-24, 34. The Plaintiffs claim that this policy also violates the RFRA because it does not further a compelling government interest. *Id.* at ¶ 3.

In support of their claims, the Plaintiffs allege that, as sincere adherents to the religion of Islam, they practice the fundamental pillars of the Sunni Islamic faith, including, praying five times a day and joining other members of their religion in prayer whenever they observe such members praying. *Id.*  at ¶¶ 1, 14-16.  In this regard, Roman alleges that Policy H prevents him from praying five times a day because he cannot pray in the prison library, nor can he pray while taking his adult continuing education classes. *Id.* at ¶ 22.   And, Johnson alleges

application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest").

2

that Policy H not only prevents him from praying five times a day, but it also prevents him from joining in prayer with other members of his religion because he cannot pray during his G.E.D. classes without first obtaining permission from his supervisors, and further, to the extent that other inmates are already praying, he must wait for at least one of those inmates to finish praying before he can start. *Id.* at ¶ 22. Thus, on these grounds, the Plaintiffs jointly contend that Policy H violates the RFRA because it places a substantial burden on their free exercise of religion by forcing them to choose between forfeiting the benefits of their education in order to follow the precepts of their Sunni Islamic faith, verses, forsaking one of the precepts of their faith in order to receive the benefits of their education. *Id.* at ¶¶ 28, 33.

In addition, the Plaintiffs allege that Policy H also violates the RFRA because it does not further a compelling government interest, and that, even assuming Policy H does further a compelling government interest, it does not represent the least restrictive means to further such interest. *Id.* at ¶¶ 3, 25-30, 34. In support of this claim, Roman alleges that the earliest and latest obligatory prayers of each day occur while he is already confined to his cell. *Id.* at ¶ 25. Generally, the other three periods for obligatory prayers occur, however, while he is away from his cell, including while he is attending classes. *Id.* Roman alleges that if he were to utilize FCI-Schuylkill's current procedures to facilitate his daily,

obligatory prayers, he would have to use the prison's "controlled movements procedure" and return to his actual cell to pray. *Id.* at ¶ 26; *see id.* ("Controlled movements occur every hour, beginning on the half hour, and last for ten minutes. Prisoners can move from one area to another only during these hourly minute periods. Once an individual arrives at a location, following a controlled movement period, he must remain there for at least one hour until the next controlled movement."). Using the "controlled movement procedure," however, would require Roman to miss an hour of class time in order to engage in a prayer that can be completed in no more than six minutes. *Id.*

Johnson similarly alleges that his daily, obligatory prayers sometimes occur while he is attending his G.E.D. classes. *Id.* at ¶ 27. When his prayers occur during such classes, Johnson, pursuant to Policy H, is required to request permission to pray. *Id.* And, to the extent that more than one other inmate is already engaged in prayer, Johnson is further required to wait until at least one of those inmates completes his prayer. *Id.* According to Johnson, however, requesting such permission and waiting on other inmates can cause him to "miss the window of time in which he is required by his religion to complete the prayer." *Id.* Thus, on these grounds, the Plaintiffs also jointly contend that Policy H constitutes an unduly and highly restrictive means to address the Plaintiffs' need to

pray five times a day, especially when—as alleged by the Plaintiffs—they could pray in their classes during scheduled breaks. *Id.* at 8-10; *id.* at ¶ 28.

Additionally, the Plaintiffs jointly allege that, on more than one occasion, prison library staff have instructed the Plaintiffs that they were not allowed to read or study religious texts when there was more than one Muslim at the library table. *Id.* at ¶ 4. According to the Plaintiffs, however, Christian inmates are permitted to read and study the Bible, even when joined by other Christians. *Id.* And, finally, the Plaintiffs jointly allege that because they need a clean area to pray, as required by their religion, they should be allowed to bring rugs to the "outside worship area," which is a section of the recreational yard containing exercise equipment. *Id.* at ¶ 21.

As for relief, the Plaintiffs seek the following: (1) a declaration that the Defendants' failure to accommodate the Plaintiffs' need to pray five times a day and to join other members of their religion in prayer violates the RFRA; (2) a preliminary and permanent injunction requiring the Defendants to accommodate the Plaintiffs' need to pray five times each day and to join members of their religion in prayer; (3) a preliminary and permanent injunction requiring the Defendants to accommodate the Plaintiffs' need to use a prayer rug while praying in the recreational facility; (4) a preliminary and permanent injunction and declaratory relief requiring the Defendants to reinstate Johnson's telephone and

visitation privileges, as well as a return of the 15 days good time credit that has been taken away from him as punishment for praying during his G.E.D. classes; (5) an award to the Plaintiffs' for costs and attorneys' fees; and (6) and any other such relief as the Court may deem just and appropriate. *Id.* at 12-13.

In response to the complaint, the Defendants have filed a motion (*doc. 10*) to dismiss, or in the alternative, a motion for summary judgment. The Defendants' motion, treated herein as a motion for summary judgment, has been fully briefed and is ripe for disposition. And, as the following disquisition illustrates, the motion should be granted.

### III. Summary Judgment Standards.

As an initial matter, the Court will treat the Defendants' pending motion as a motion for summary judgment since disposition of the motion requires the Court to consider matters beyond the pleadings. Moreover, the Defendants moved for summary judgment in the alternative, and the Plaintiffs responded to the motion as if it were one for summary judgment. Thus, we proceed accordingly.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for

which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*,

7

477 U.S. at 322.   Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.   *Id.* at 252.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Anderson*, 477 U.S. at 248.   A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.   *Id.* at 248-49.   When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'"   *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial.   *Anderson*, 477 U.S. at 249.   The proper inquiry of

8

the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex*, 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV. Discussion.

The Defendants seek summary judgment in their favor, asserting—among other things—that the Plaintiffs have failed to properly exhaust their administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"). Under the PLRA, a prisoner must present his claim(s) through an administrative grievance process before seeking redress in federal court. The PLRA specifically provides as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law by a prisoner confined in any jail prison, or other correctional facility, until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Because an inmate's failure to exhaust under the PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, a prisoner's failure to exhaust administrative remedies must be pled and proven by the defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. And, "it is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F.Supp.2d 884, 894–95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)). In fact, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71.

Here, in order to determine whether the Plaintiffs have properly exhausted their administrative remedies, a firm understanding of the administrative remedy process, under which a federal prisoner may seek review of his imprisonment, is paramount.   In this regard, the BOP has established a multi-tiered administrative remedy system.   *See* 28 C.F.R. §§ 542.10-542.19 (1997).   First, a prisoner "shall

. . . present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). In the event, however, that informal resolution is unsuccessful, the prisoner may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has 20 days in which to respond. 28 C.F.R. § 542.18. If the prisoner is not satisfied with the warden's response, then the prisoner may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within 20 calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). The Regional Director has 30 days in which to respond. 28 C.F.R. § 542.18. If the prisoner is also not satisfied with the Regional Director's response, then the prisoner may submit an appeal, on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). The General Counsel has 40 days in which to respond. 28 C.F.R. § 542.18.

## A. Plaintiff Roman.

Here, with respect to Roman, the Defendants argue that he has only exhausted one administrative remedy and that of the two claims asserted in that administrative remedy, only one pertains to the underlying claims in the complaint.

*Doc. 12* at 8-9; *doc. 17* at 4-5.   Accordingly, the Defendants argue that the only claim that can proceed in this action is Roman's claim that Policy H prevents him from praying while studying in the library and while at his adult continuing education classes.  *Doc. 17* at 5.  As argued by the Defendants, however, this claim challenges a prior institutional policy—Policy H—and is therefore no longer accurate.  *Doc. 12* at 9.  The Defendants further contend that although the current institutional policy, Institution Supplement SCH 5360,09I ("Policy I"), does not explicitly address inmate prayer in the library or at elective education,[2] FCI-Schuylkill's practice, nevertheless, permits inmates to pray in those areas subject to certain limited conditions.  *Id.*

In response, Roman argues that his administrative remedy was based not on a specific Institution Supplement, such as Policies H or I, but rather, on the Defendants' practices.  *Doc. 15* at 5.  In fact, Roman argues that he never even mentioned an Institution Supplement in his initial request for administrative relief, and that he only began referencing such supplements because the Defendants did so in their responses to his various challenges throughout the BOP's administrative remedy system.  *Id.* at 5-6.  Roman further argues that even if the Defendants are correct that his challenges were based on Policy H, he would not be required to

---

[2] Roman's adult continuing education classes fall within the scope of "elective education."  Johnson's G.E.D. classes, however, are considered "mandatory assignments."  *Doc 1* at ¶ 19.

exhaust a new administrative remedy because Policy I merely summarizes the prior policy versions, and therefore, does not meaningfully address Roman's grievances. *Id.* at 6-7.   Roman finally argues that even assuming the Defendants' argument is true—that the practices at FCI-Schuylkill have since changed—this change does not negate the fact that Roman has exhausted his administrative remedies.  *Id.* at 8. In support, Roman argues the following: (1) that the Defendants' arguments undermine the PLRA ; (2) that if the Defendants actually intended to modify their practices, such modifications would be reflected in the new policy; (3) that the purported change in the Defendants' practices only addresses one, but not all, of the unconstitutional acts committed by the Defendants; and (4) that without a court order, the Defendants' unwritten practices could change at any time to once again prohibit prayer during elective education classes.   *Id.* at 8-10.

In this case, it is undisputed that Roman has filed a total of 18 administrative remedies during his incarceration with the BOP.  *Doc. 11* at ¶ 18; *doc. 16* at ¶ 18. Of those 18, it is undisputed that Roman has exhausted only one administrative remedy that actually pertains to the claims asserted in the complaint—Remedy Number 815375 ("Remedy 815375").   *Doc. 11* at ¶ 19; *doc. 16* at ¶ 19.   It is undisputed that Roman asserts the following in Remedy 815375:

> During voluntary Ace classes I am being denied to pray in the library in the designated areas for prayer.  And we are not being allowed to pray in two's and three's. As Muslim congregation is obligatory and if there are two or three Muslims we must pray

together.  I was told in the past by staff to choose between prayer and education.  Furthermore we were forced by staff to pray one at a time.  Moreover the library leasure [sic] center is open during our [r]ecreation times and I use that time to study (Educational Purposes) and should be allowed to pray when prayer comes in.  [B]ecause the time I spend in the library studying is my recreation time.  And I should be allowed to pray in the designated prayer area.

*Doc. 11-1* at 25 (Roman's Request for Administrative Remedy); *accord id.* at 27 (Roman's Regional Administrative Remedy Appeal) and 30 (Roman's Central Office Administrative Remedy Appeal); *see also doc. 11* at ¶¶ 23, 26, 29; *doc. 16* at ¶¶ 23, 26, 29.

Based upon these undisputed facts, we conclude that Roman has exhausted his administrative remedies, but only with respect to one of the claims in his complaint.  In Remedy 815375, Roman asserted two claims—(1) that he was denied the right to pray in the library during adult continuing education classes and (2) that he was denied the right to pray in twos and threes.  *See doc. 11-1* at 25, 27, 30.  In the Plaintiffs' brief in opposition to the Defendants' motion, however, the Plaintiffs cite to the complaint and jointly assert that they have *also* been denied the right (1) to pray while at assigned jobs or other mandatory assignments without first requesting permission; (2) to read or study religious texts in the library when there is more than one Muslim at the table; and (3) to use a prayer rug while praying in the prison's recreational yard.  *Doc. 15* at 7.  Roman, however, cannot

15

raise these claims now because he did not assert them in Remedy 815375. Moreover, although Roman raised two claims in Remedy 815375, he has only alleged one of those claims in the complaint—that is, Roman has only alleged that he cannot pray while in the prison library and while at his adult continuing education classes. *See doc. 1* at ¶¶ 3, 22, 26.   Roman has not alleged in the complaint, however, that he cannot pray in twos and threes.  In fact, only Johnson has alleged such an inability to pray in twos and threes.  *See id*. at ¶¶ 3, 22, 27. Thus, with respect to Roman, the only claim in the complaint that is properly before the Court is Roman's claim that he has been denied the right to pray in the prison library and at his adult continuing education classes.

Although the Defendants concede that Roman has exhausted this particular claim (*doc. 17* at 5), the Defendants argue that the Plaintiffs have not refuted their evidence that the current practice of FCI-Schuylkill permits inmates to pray in the prison library and at adult continuing education classes. *Doc. 12* at 9; *doc. 17* at 7. In support of their position, the Defendants have proffered the Declaration of Jennifer Reigel ("Reigel"). *Doc. 11-1* at 56-58.  Reigel is employed by the United States Department of Justice, BOP, as a Supervisor of Education at FCI-Schuylkill. *Id.* at 56, ¶ 1.  She has been employed with the BOP since June of 1999 and was more recently promoted to Supervisor of Education in January of 2015. *Id.*  In her declaration, Reigel acknowledges that although Policy I does not explicitly address

inmate prayer in the library or at elective education, the current practice of FCI-Schuylkill is to allow inmates to pray in those areas. *Id.* at 56, ¶ 4. Reigel detailed that practice as follows: first, the inmate informs the staff member, who is supervising the area, that he intends to pray; then, the staff member advises the inmate on a safe and secure area to pray that does not interfere with, and allows for, the orderly operation of FCI-Schuylkill. *Id.* The prayer is limited to two inmates within the supervised area. *Id.*

Roman, who has responded to the Defendants' statement of material facts, generally "denie[s] that 'the current practices of FCI Schuykill [are] to allow inmates to pray in those areas.'" *Doc. 16* at ¶ 55. Although Roman "denie[s]" this fact, he does not cite to any evidence, nor does he proffer any evidence, which demonstrates that this fact is genuinely disputed. *See* L.R. 56.1 ("Statements of material facts in support of, *or in opposition to*, a motion shall include references to the parts of the record that support the statements.") (emphasis added); Fed. R. Civ. P. 56(c) (explaining that the *nonmoving* party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute.") (emphasis added). Thus, this

fact, that "the current practice of FCI Schuykill is to allow inmates to pray in [the library or at elective education] . . . ," is admitted as undisputed. *Doc. 11* at ¶ 55; *Doc. 16* at ¶ 55; *see also Thomas v. Lawler*, No. 1:CV-10-2437, 2015 WL 5567921, at *3 n.1 (M.D. Pa. Sept. 22, 2015) (deeming defendants' statement of material facts admitted and explaining that although the plaintiff filed a response to the defendants' statement of material facts, the response did not comply with the requirements of Pa. M.D. Local Rule 56.1 because the plaintiff did not support his denials with citations to evidence in the record); *see also Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) ("Once the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial.").

Accordingly, Roman's claim that he "cannot pray in the Prison library or while taking adult continuing education classes," *doc. 1* at ¶ 22, is wholly insufficient to overcome the uncontradicted evidence of record, which establishes that the current practice at FCI-Schuylkill is to allow inmates to pray both in the library and at adult continuing education classes. As such, there is no genuine issue of material fact regarding whether Roman has been forced to choose between forfeiting the benefits of his adult continuing education classes in order to follow

the precepts of his Sunni Islamic faith, verses, forsaking one of the precepts of his faith in order to receive the benefits of said classes.   *See generally Small v. Lehman*, 98 F.3d 762, 768 (3d Cir.1996) *overruled on other grounds by City of Boerne v. Flores*, 521 U.S. 507 (1997) (finding that a challenged restraint on the freedom of religion does not fall within the realm of the RFRA unless the prisoner can establish that a "substantial burden" is placed on his ability to exercise said freedom); *Ford v. Bureau of Prisons*, 570 F. App'x 246, 249-250 (3d Cir. 2014) ("[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally acceptable to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.").

### B. Plaintiff Johnson.

With respect to Johnson, however, the Defendants argue that they found no records to suggest that Johnson made any attempt to exhaust his administrative remedies.   *Doc. 12* at 8.  Specifically, the Defendants argue that although Johnson has filed seven administrative remedies, none of those remedies relate to the underlying claims in the complaint.   *Id.*   Thus, the Defendants contend that Johnson's failure to exhaust his administrative remedies requires that summary judgment be entered in their favor.   *Id.*

In response to the Defendants' motion, Johnson concedes that he has not "personally exhaust[ed] the administrative remedy process[.]" *Doc. 15* at 11. Johnson argues, nevertheless, that the Defendants had adequate notice and opportunity to address his grievances through Roman's administrative challenges and that, therefore, Johnson should not be required to re-exhaust the very same administrative remedies. *Id.* at 11-12. Johnson makes this argument on the basis of "vicarious exhaustion." *Id.* at 11-13.

In support of the Defendants' position, that Johnson has not exhausted his administrative remedies, the Defendants have proffered the Declaration of Matthew Lavelle ("Lavelle"). *Doc. 11-1* at 3-8. Lavelle is employed by the United States Department of Justice, BOP, as an Attorney Advisor at the Federal Correctional Complex in Allenwood, Pennsylvania. *Id.* at 3, ¶ 1. In his declaration, Lavelle proffers that there is no record that Johnson ever filed an administrative remedy regarding his religious rights, prayer, or any of the issues raised in the complaint. *Id.* at 8, ¶ 30.

Johnson, however, has not come forward with evidence to refute or contradict this declaration; rather, he relies on the concept of "vicarious exhaustion" to argue that Roman's properly exhausted administrative remedies should also apply to him. Even assuming, without recommending, that the United States Court of Appeals for the Third Circuit, would follow "vicarious

exhaustion"—a concept which has arisen in other Circuits in the context of class actions lawsuits—we note that this action, involving two prisoner-plaintiffs, has not been certified as a class action lawsuit. *See doc. 15* at 11-13 (Plaintiffs collecting cases to illustrate "vicarious exhaustion" in the class action context). Thus, we find that the Plaintiffs' argument is unavailing under the circumstances of this case. Moreover, the federal regulations that set forth the BOP's administrative remedy system, as well as case law from this Circuit, suggest that the exhaustion of Roman's administrative remedies *do not* extend to Johnson. *See* 28 C.F.R. § 542.10 ("An inmate may not submit a Request or Appeal on behalf of another inmate."); *Aldridge v. Good*, No. 05-253J, 2006 WL 2819942, at *2 n.5 (W.D. Pa. Sept. 28, 2006) ("Plaintiff cannot rely on another inmate's grievance to satisfy exhaustion."); *Stevenson v. Carroll*, No. 04-139-GMS, 2011 WL 6842955, at *6 (D. Del. Dec. 29, 2011), *aff'd*, 474 F. App'x 845 (3d Cir. 2012) ("The defendants conducted an exhaustive search and found no records to suggest that Manley and Jones made any attempt to exhaust their administrative remedies. Stevenson, submitted a grievance that was accepted and returned. Stevenson's submission of a grievance, however, does not extend to the other plaintiffs."); *see also Nyhuis*, 204 F.3d at 73 ("'[I]t is beyond the power of this Court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." (quoting *Beeson*, 28 F.Supp.2d at 894–95 (citing

*Weinberger*, 422 U.S. at 766))).   Thus, on the basis of the foregoing, we recommend that the Defendants' motion, treated herein as a motion for summary judgment, be granted.

## V. Recommendation.

Accordingly, **IT IS HEREBY RECOMMENDED** that the Defendants' motion (*doc. 10*) be granted.[3]

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge

---

[3] Although this recommendation is made in the early stages of this case, the Plaintiffs have not invoked Rule 56(d) of the Federal Rules of Civil Procedure, which states as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this __11th__ day of __July, 2016__.

_**S/ Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge