UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MILTON ROMAN and              :
ANTONIO JOHNSON,              :CIVIL ACTION NO. 3:15-CV-2247
                             :
        Plaintiffs,          :(JUDGE CONABOY)
                             :(Magistrate Judge Schwab)
FEDERAL BUREAU OF PRISONS,    :
et al.,                      :
                             :
        Defendants.          :
                             :

---

**MEMORANDUM**

Pending before the Court is Magistrate Judge Susan E. Schwab's Report and Recommendation (Doc. 18) in which she recommends that Defendants' Motion to Dismiss Or, in the Alternative, Motion for Summary Judgment (Doc. 10) be treated as a motion for summary judgment and be granted (*id.* at 22).  For the reasons that follow, the Court adopts Magistrate Judge Schwab's Report and Recommendation (Doc. 18) in part and concludes that Defendant's motion (Doc. 10) is properly granted in part and denied in part.

**I. Background**

Plaintiffs filed this counseled action on August 1, 2016, pursuant to the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*, ("RFRA").  (Doc. 1.)  Plaintiffs state that they are practicing Sunni Muslims and sincere adherents of Sunni Islam which requires them to pray five times each day during specific periods of time (Doc. 1 ¶¶ 1, 14, 15) and further requires that, whenever they observe another Sunni Muslim in prayer, they join that person in prayer (*id.* ¶ 1).  Plaintiffs maintain that FCI-

Schuylkill's policies prevent them from praying five times a day and, in certain situations, allow a limit of two inmates to pray at the same time.  (Doc. 1 at 7.)  They claim that the Prayer Policy at FCI-Schuylkill violates the RFRA because it places a substantial burden on their free exercise of religion (Doc. 1 ¶¶ 3, 23-24, 34), and because it does not further compelling government interests, and even assuming that it does, it is not the least restrictive means to further such an interest  (*id.* ¶ 3, 25-30, 34).

Plaintiffs allege that, on or about November 5, 2014, FCI-Schuylkill adopted Institutional Supplement SCH 5360.09H, Religious Beliefs and Practices ("Prayer Policy") which

> mandates that inmates request permission from staff to engage in "required or ritual prayers while at assigned jobs or other mandatory assignments," and provides staff with discretion to "determine how many inmates can make the prayers at a given time," with a limit of "two (2) inmates from the same work detail or other mandatory assignment . . . pray[ing] at the same time." Inmates that are not at their assigned jobs, or on a mandatory assignment, are only permitted to pray in three locations–-the chapel, their own cell, and a section of the Recreation Department that may be utilized for prayer by "no more than two (2) inmates . . . at any given time."

(Doc. 1 at ¶ 2 (quoting Ex. A (Inst. Supp. SCH 5360.09H) (Doc. 1-1)).)[1]  Plaintiffs generally contend that the Prayer Policy

---

[1]   Defendants state that Institution Supplement H, the supplement referred to in the Complaint, was rescinded on November 9, 2015, and replaced by Institution Supplement SCH 5360.09I ("Institution Supplement I") which became effective on the same

violates the Religious Freedom Restoration Act because it places a substantial burden on their free exercise of religion and does not further a compelling government interest.  (Doc. 1 ¶ 2.)  They specifically assert that the Prayer Policy

>            precludes Mr. Roman from praying while he is studying in the Prison library or attending continuing education classes, forcing him to choose between his education and the exercise of his religion.  And, the Prayer Policy substantially affects Mr. Johnson's ability to engage in prayer while in the Prison library or attending mandatory General Equivalency Degree (G.E.D.) courses by requiring him to request permission to pray and then wait for others to first complete their prayers.

(*Id.*)  In the "Nature of Action" section of their Complaint, Plaintiffs state that "Mr. Roman and Mr. Johnson seek injunctive and declaratory relief directing that Defendants permit them to pray while attending mandatory or elective classes and permit them to pray and study religious texts in the library."  (Doc. 1 ¶ 5.) Plaintiff Roman is enrolled in adult continuing education classes which are not mandatory, and Plaintiff Johnson participates in the G.E.D. program which is considered a mandatory assignment.  (Doc. 1

---

date--two weeks before this action was filed.  (Doc. 20 at 8 (citing Doc. 11 ¶¶ 51-53).)  Plaintiffs aver that Supplement I does not differ in any meaningful way from Supplement H.  (Doc. 16 ¶ 54.)  Supplement I identifies the same three locations for prayer as previous supplements and also limits the number of inmates who can pray together.  (Doc. 11-1 at 53.)  The Declaration of Jennifer Reigal, Supervisor of Education at FCI-Schuylkill, acknowledges that Supplement I does not address inmate prayer in the library or at elective education.  (Doc. 11-1 at 56.)

¶ 19.)  Plaintiffs aver that the Prayer Policy had different provisions governing each type of program.  (*Id.*)

Plaintiffs further aver "[u]pon information and belief," that the Prison adopted its current policy on inmate prayer on or about October 9, 2012, a policy which has remained "largely consistent since then."  (Doc. 1 ¶ 22 (citing Ex. B (Oct. 9, 2012, Inst. Supp. SCH 5360.09F) (Doc. 1-2) and Ex. C (Apr. 15, 2013, Inst. Supp. SCH 5360.09G) (Doc. 1-3)).)  In this Paragraph of the Complaint, Plaintiffs reiterate that, because of the policies, Plaintiff Roman "cannot pray in the Prison Library or while taking adult continuing education classes" and Plaintiff Johnson

> cannot pray during his G.E.D. class without first obtaining permission from his supervisors and, if two inmates are currently praying, waiting for at least one of them to finish praying, in direct conflict with his sincere religious belief that, when he observes another Muslim in prayer, he must immediately stop any activity and join that person in prayer.

(Doc. 1 ¶ 22.)

Plaintiffs assert that Mr. Roman has been harmed because he was notified on more than one occasion that the classes he is taking are not mandatory assignments so he must choose between taking the classes or praying in his cell (Doc. 1 ¶ 23); Mr. Johnson was harmed because his reprimand for praying while in the education center resulted in a six-month suspension of his phone and visitation privileges, being subjected to a form of probation

4

for sixty days, and a fifteen day reduction in his good time credits (*id.* ¶ 24).

Plaintiffs also allege that, on more than one occasion, they have been instructed by library staff that they are not allowed to read or study religious texts when there is more than one Muslim at the library table but Christian inmates have no such restrictions. (Doc. 1 ¶ 4.)  Plaintiffs further maintain that the designated outside worship area does not offer them a clean area to pray as required by their religion, "particularly as they are not allowed to bring prayer rugs to this designated worship area."  (Doc. 1 ¶ 21.)

Plaintiffs seek the following relief: 1) a declaration that Defendants failure to accommodate Plaintiffs's need to pray five times daily and join members of their religion in prayer violates RFRA; 2) a preliminary and permanent injunction requiring Defendants to accommodate Plaintiffs' need to pray five times daily and join members of their religion in prayer; 3) a preliminary and permanent injunction requiring Defendants to accommodate Plaintiffs' need to use a prayer rug while praying in the recreational facility; 4) a preliminary and permanent injunction and declaratory relief requiring Defendants to reinstate Plaintiff Johnson's telephone and visitation privileges and return the fifteen days good time credit taken away as punishment for praying while attending G.E.D. classes; 5) an award to the Plaintiffs for

full costs and attorneys' fees; and 6) such other relief as the
Court may deem just and appropriate.  (Doc. 1 at 12-13.)

Construing Defendants' motion as one for summary judgment,
Magistrate Judge Schwab's July 11, 2016, Report and Recommendation
concluded that the motion should be granted.[2]  (Doc. 18.)   She
first concluded that Plaintiff Roman exhausted only one
administrative remedy, Administrative Remedy 815375 dated March 18,
2015.  This request for relief stated the following:

> During voluntary Ace classes I am being
> denied to pray in the library in the
> designated areas for prayer.  And we are not
> being allowed to pray in two's and three's.
> As Muslim congregation is obligatory and if
> there are two or three Muslims we must pray
> together.  I was told in the past by staff to
> choose between prayer and education.
> Furthermore we are forced by staff to pray
> one at a time.  Moreover the library leasure
> [sic] center is open during our [r]ecreation
> times and I use that time to study
> (Educational Purposes) and should be allowed
> to pray when prayer comes in. [B]ecause the
> time I spend in the library studying is my
> recreation time.  And I should be allowed to
> pray in the designated prayer area.

(Doc. 11-1 at 25.)  Finding that only Plaintiff Johnson alleged in
the Complaint that he could not pray in twos and threes, the
Magistrate Judge found that the only claim exhausted in Plaintiff

---

[2]  Magistrate Judge Schwab concluded as an initial matter that
the motion should be treated as one for summary judgment because
disposition of the motion required consideration of matters beyond
the pleadings, Defendants moved for summary judgment in the
alternative, and Plaintiffs responded to the motion as if it were
one for summary judgment.  (Doc. 18 at 6.)

Roman's remedy *and* raised in the Complaint is the allegation that

Plaintiff Roman cannot pray while in the prison library and at

adult continuing education classes.  (Doc. 18 at 16.)  As to this

claim, Magistrate Judge Schwab concluded that because Plaintiffs

proffered no evidence in support of their denial of Defendants'

evidence (the Declaration of Jennifer Reigel (Doc. 11-1 at 56-58))

that the current practice at FCI-Schuylkill permits inmates to pray

in the prison library and at adult continuing education classes,

Defendants' asserted fact "that 'the current practice of FCI

Schuylkill is to allow inmates to pray in [the library or at

elective education] . . . ,' is admitted as undisputed."  (Doc. 18

at 18-19 (citing Doc. 16 ¶ 55; Doc. 16 ¶ 55; *Thomas v. Lawler*, No.

1:CV-10-2437, 2015 WL 5567921, at *3 n.1 (M.D. Pa. Sept. 22, 2015)

(deeming defendants' statement of material facts admitted and

explaining that although the plaintiff filed a response to the

defendants' statement of material facts, the response did not

comply with the requirements of Pa. M.D. Local Rule 56. 1 because

the plaintiff did not support his denials with citations to

evidence in the record); *Fireman's Ins. Co. of Newark v. DuFresne*,

676 F.2d 965, 969, (3d Cir 1982) ("Once the moving party has

supplied sufficient affidavits in support of it motion, the

opposing party must respond by supplementing the record in some

manner – whether by its own affidavits or otherwise–setting forth

specific facts demonstrating that there is a genuinely disputed

factual issue for trial.")  She further explained, "[a]s such, there is no genuine issue of material fact regarding whether Roman has been forced to choose between forfeiting the benefits of his adult continuing education classes in order to follow the precepts of his Sunni Islamic faith, vers[u]s, forsaking one of the precepts of his faith in order to receive the benefits of said classes." Doc. 18 at 18-19 (citing *Small v. Lehman*, 98 F.3d 762, 768 (3d Cir. 1996) *overruled on other grounds by City of Boerne v. Flores*, 521 U.S. 507 (1997); *Ford v. Bureau of Prisons*, 570 F. App'x 246, 249-50 (3d Cir. 2014)).)

Magistrate Judge Schwab further concluded that Plaintiff Johnson's claims fail because he did not exhaust his administrative remedies and the concept of "vicarious exhaustion" (that Defendants had adequate notice and opportunity to address his grievances through Plaintiff Roman's administrative challenges) would not apply here.  (Doc. 18 at 21-22.)

On July 25, 2016, Plaintiffs filed objections to the Report and Recommendation objecting to the Magistrate Judge's conclusions regarding Plaintiff Roman's congregational prayer and library/continuing education class prayer claims.  (Doc. 19.) Defendants filed Brief in Opposition to Objection to Magistrate Judge Schwab's Report and Recommendation (Doc. 20) on August 4, 2016. (Doc. 20.)  With the filing of Plaintiffs' reply brief (Doc. 21) on August 11, 2016, this matter was fully briefed and ripe for

disposition.

## II. Discussion

### A.   *Legal Standards*

### 1.   Summary Judgment Standard

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted).  The moving party may

meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Id.* at 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the plaintiff.  *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 267 (3d Cir. 2001) (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 854 N.1 (3d Cir. 1990).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## 2.  Religious Freedom Restoration Act

The Religious Freedom Restoration Act ("RFRA") was enacted "to insure broad protection for religious liberty."  *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2761 (2014).  RFRA provides that "Government shall not substantially burden a person's exercise

10

of religion even if the burden results from a general rule of applicability." 42 U.S.C. § 2000bb-1(a). As explained in *Garraway v. Lappin*, 490 F. App'x 440 (3d Cir. 2012) (not precedential),

> a challenged restraint on the freedom of religion does not fall within the scope of the RFRA unless the inmate can establish that a "substantial burden" is placed on his ability to exercise said freedom. *Small v. Lehman*, 98 F.3d 762, 767 (3d Cir. 1996), *overruled on other grounds by City of Boerne v. Flores*, 521 U.S. 507. This court has said that a substantial burden exists where:
>
> > (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or
> >
> > (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.
>
> *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). It is only once a substantial burden on religion has been established by the prisoner that the government must then establish "that it has a 'compelling interest' in its actions and is furthering that interest by the 'least restrictive means.'" *Small*, 98 F.3d at 767 (citations omitted).

*Garraway*, 490 F. App'x at 444.

## 3.   <u>Exhaustion of Administrative Remedies</u>

The Report and Recommendation thoroughly sets out the relevant exhaustion inquiry pursuant to the Prison Litigation Reform Act

"PLRA").   (Doc. 18 at 10-12.)

> Under the PLRA, a prisoner must present his claim(s) through the administrative grievance process before seeking redress in federal court. The PLRA specifically provides as follows: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility, until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.")  Because an inmate's failure to exhaust under the PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Rather, a prisoner's failure to exhaust administrative remedies must be pled and proven by the defendants.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

> Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise fo their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.  And, "it is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion

requirement whether on the grounds of
futility, inadequacy or any other basis."
*Nyhuis v. Reno*, 204 F. 3d 65, 73 (3d Cir.
2000) (quoting *Beeson v. Fishkill Corr.
Facility*, 28 F. Supp. 2d 884, 894-95
(S.D.N.Y. 1998) (citing *Weinberger v. Salfi*,
422 U.S. 749, 766 (1975)).  In fact, the PLRA
"completely precludes a futility exception to
its mandatory exhaustion requirement."
*Nyhuis*, 204 F.3d at 71.

Here, in order to determine whether the
Plaintiffs have properly exhausted their
administrative remedies, a firm understanding
of the administrative remedy process, under
which a federal prisoner may seek review of
his imprisonment, is paramount.  In this
regard, the BOP has established a multi-
tiered administrative remedy system.  *See* 28
C.F.R. § 542.10-542.19 (1997).  First, a
prisoner "shall . . . present an issue of
concern informally to staff, and staff shall
attempt to informally resolve the issue
before an inmate submits a Request for
Administrative Remedy."  28 C.F.R. §
542.13(a).  In the event, however, that
informal resolution is unsuccessful, the
prisoner may file "a formal written
Administrative Remedy Request, on the
appropriate form (BP-9), [within] 20 calendar
days following the date on which the basis
for the Request occurred."  28 C.F.R. §
542.14(a).  The warden has 20 days in which
to respond.  28 C.F.R. § 542.18.  If the
prisoner is not satisfied with the warden's
response, then the prisoner may submit an
appeal, on the appropriate form (BP-10), to
the appropriate Regional Director within 20
calendar days from the date the warden signed
the response.  28 C.F.R. § 542.15(a).  The
Regional Director has 30 days in which to
respond.  28 C.F.R. § 542.18.  If the
prisoner is also not satisfied with the
Regional Director's Response, then the
prisoner may submit an appeal, on the
appropriate form (BP-11) to the General
Counsel within 30 calendar days from the date

13

> the Regional Director signed the response.
> 28 C.F.R. § 542.15(a0.  The General Counsel
> has 40 days in which to respond.  28 C.F.R. §
> 542.18.

(Doc. 18 at 10-12.)

## B.   *Plaintiffs' Objections*

Plaintiffs' Objection to Magistrate Judge Schwab's Report and Recommendation (Doc. 19) sets out the following objections: 1) Plaintiff Roman alleges in the Complaint that he is prohibited from engaging in congregational prayer and he is entitled to pursue that claim (Doc. 19 at 3); and 2) Defendants' alleged change in practice does not render Plaintiff Roman's claim that he is prohibited from praying in the prison library during adult continuing education classes moot (*id.* at 4).

When objections are filed to a Report and Recommendation, the reviewing court conducts a *de novo* review of those portions of the report to which objection is made.  28 U.S.C. § 636(b)(1).  To warrant *de novo* review, the objections must be both timely and specific.  *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  The court may accept, reject or modify, in whole or in part, the findings made by the magistrate judge.  28 U.S.C. § 636(b)(1).  Uncontested portions of the report are reviewed for clear error. *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

## 1.   **Congregational Prayer**

Plaintiffs contend that Magistrate Judge Schwab improperly concluded that Plaintiff Roman did not assert a claim in the

14

Complaint that he was prohibited from engaging in congregational prayer.  (Doc. 19 at 3.)  Defendants maintain Magistrate Judge Schwab correctly concluded that only Plaintiff Johnson alleged in the Complaint an inability to pray in twos and threes.  (Doc. 20 at 12.)

Although Magistrate Judge Schwab recognized that Plaintiff Roman's relevant grievance asserted that he was not being allowed to pray in twos and threes and that this was an obligatory aspect of Muslim prayer (Doc. 18 at 16 (citing Doc. 11-1 at 25)), she concluded that the only claim exhausted in Plaintiff Roman's remedy *and* raised in the Complaint is the allegation that Plaintiff Roman cannot pray while in the prison library and at adult continuing education classes--only Plaintiff Johnson alleged an inability to pray in twos and threes in the Complaint (Doc. 18 at 16).

Plaintiffs dispute this assessment, citing several paragraphs in the Complaint in support of their argument that both Plaintiffs alleged they were improperly denied the right to congregational prayer.  (Doc. 19 at 3-4.)

> Plaintiffs' "faith . . . requires that, whenever they observe another Sunni Muslim in prayer, they join that person in prayer." [Dkt. 1 at ¶ 1].
>
> The Prayer Policy limits prayer during mandatory assignments and while in the designated section of the recreation department--the only location except the chapel or an inmate's cell where prayer is permitted--to "'no more than two (2) inmates . . . at a given time.'" [Dkt. 1 at ¶ 2]

> "Mr. Roman and Mr. Johnson therefore seek a preliminary and permanent injunction preventing Defendants from violating the Religious Freedom Restoration Act and a declaration that Defendants' failure to accommodate Plaintiffs' need to pray five times daily and to join members of their religion in prayer violates the Religious Freedom Restoration Act." [Dkt. 1 ¶ 35].

(Doc. 19 at 3-4.)

Defendants respond that only Plaintiff Johnson sought relief based on the alleged inability to pray in groups, citing three allegations in the Complaint related to the number of individuals engaged in prayer at one time.   (Doc. 20 at 13-14.)

> (1) "[T]he Prayer Policy substantially affects Mr. Johnson's ability to engage in prayer . . . by requiring him to . . . wait for others to complete their prayers."  Compl. ¶ 3.

> (2) "Mr. Johnson cannot pray during his G.E.D. class without first obtaining permission from his supervisors and, if two inmates are currently praying, waiting for at least one of them to finish praying, in direct conflict with his sincere religious belief . . . ." Compl. ¶ 22).

> (3) "The Prayer Policy also places a substantial burden on Mr. Johnson's free exercise of religion. . . . [T]o the extent more than one inmate is engaged in prayer, he would also need to wait until at least one of those inmates completes the prayer.  Not only is this in direct conflict with Mr. Johnson's sincerely held belief that he is required to join other members of his faith when they are engaged in prayer, but the wait could also cause Mr. Johnson to miss the window of time in

16

> which he is required by his religion to
> complete the prayer."   Compl. ¶ 27.

(Doc. 20 at 13-14.)   Defendants assert generally that because Plaintiff Johnson is out of the case and Plaintiff Roman did not join in the allegations contained in these three paragraphs or make similar allegations, a claim regarding praying in groups is no longer in the case.   (Doc. 20 at 14.)

Responding directly to the paragraphs cited by Plaintiffs, Defendants state that the assertion regarding the requirement that Sunni Muslims join others in prayer (Doc. 1 ¶ 1) simply presents background information about the Sunni Islamic faith and provides a factual foundation for Plaintiff Johnson's group prayer claim. (Doc. 20 at 15.)

Defendants similarly allege that Plaintiffs' reliance on the language contained in Supplement H restricting prayer to no more than two inmates at a given time is merely background about the alleged effect of FCI Schuylkill's rescinded policy on Plaintiff Johnson's allegations.   (*Id.*)   They specifically state that the provision limiting the number of inmates who can pray together "does not even hint that Roman's religious exercise was burdened by this portion of FCI Schuylkill's alleged policy."   (Doc. 20 at 15-16.)

Finally, Defendants maintain that the paragraph seeking injunctions preventing them from violating the RFRA and a declaration that failure to accommodate Plaintiff's need to pray

five times daily and join members of their religion in prayer violates the RFRA (Doc. 1 ¶ 35) is not an allegation that the alleged policy about praying burdened Plaintiff Roman's exercise of religion.  (Doc. 20 at 16.)  Rather, Defendants contend it is a request for relief based on the preceding allegations in the Complaint that included claims by Plaintiff Johnson about praying in groups but not by Plaintiff Roman.  (*Id.*)

Defendants conclude that "Roman did not allege that a policy about praying in groups burdened his religious exercise.  A straightforward reading of the complaint leaves no doubt that Johnson was the only plaintiff asserting that type of claim." (Doc. 20 at 16.)

Plaintiffs reply that Plaintiff Roman's statements, viewed in the appropriate context, show that he alleged that he was denied the right to engage in congregational prayer.  (Doc. 21 at 2.) They reiterate the three allegations previously referenced: that his faith requires that whenever he observes another Sunni Muslim in prayer he join that person in prayer; that the Prayer Policy prohibits prayer by more than two inmates at a given time; and that he seeks a declaration that Defendants' failure to accommodate his need to join members of his religion in prayer violates the RFRA. (Doc. 21 at 2.)

Though Defendants find that "[a] straightforward reading of the complaint leaves no doubt that Johnson was the only plaintiff

18

asserting that type of claim" (Doc. 20 at 16), a slightly more broad reading of the Complaint indicates Plaintiff Roman alleges that, pursuant to the Prayer Policy, he could not join members of his religion in prayer, a requirement of his religion, if two inmates were already engaged in prayer and that this restriction violates the RFRA.  (Doc. 1 ¶¶ 1, 2, 35.)  Accordingly, given the notice pleading requirements of Federal Rule of Civil Procedure 8(a), the Court finds that a fair reading of the Complaint compels the conclusion that Plaintiff Roman, as well as Plaintiff Johnson, asserted his inability to pray in groups violated the RFRA, and this claim properly goes forward as to Plaintiff Roman.

## 2. __Library and Adult Continuing Education Class Prayer__

Plaintiff Roman asserts that Magistrate Judge Schwab erred in concluding that his library/continuing education class prayer claim is properly dismissed because there is no genuine issue of material fact that the prison's current practice allows him to pray in these locations.  (Doc. 19 at 4-5 (citing Doc. 18 at 18-19).)  Plaintiff Roman argues that he can reasonably expect the violation of his rights to recur and, therefore, the claim should be allowed to go forward.  (*Id.*)  Defendants support the Magistrate Judge's conclusion and respond to his recurrence allegation with the assertion that Plaintiff Roman cannot make the showing necessary to seek prospective relief.  (Doc. 20 at 18.)

As set out previously, Magistrate Judge Schwab concluded that

19

Defendants' asserted fact "that 'the current practice of FCI Schuylkill is to allow inmates to pray in [the library or at elective education] . . . ,' is admitted as undisputed," (Doc. 18 at 18-19 (citing Doc. 16 ¶ 55; Doc. 16 ¶ 55)), and "[a]s such, there is no genuine issue of material fact regarding whether Roman has been forced to choose between forfeiting the benefits of his adult continuing education classes in order to follow the precepts of his Sunni Islamic faith, vers[u]s, forsaking one of the precepts of his faith in order to receive the benefits of said classes" (*id.* at 19).  This determination goes to the merits of the RFRA claim, i.e., Plaintiff did not establish that Defendants' policy was a substantial burden on his religion, *Small*, 98 F.3d at 767.

The parties' arguments regarding the propriety of the Magistrate Judge's conclusion on the issue of library/continuing education class prayer focus on Plaintiff Roman's ability to either initially raise this claimed RFRA violation or continue it after the "current practice" was implemented at FCI-Schuylkill. Plaintiff frames his argument in terms of mootness: although the Institution Supplement referenced in the Complaint had changed prior to the filing of the case, the supplement referenced (Supplement H) and the new supplement (Supplement I) were essentially the same, neither his administrative remedy nor the Complaint was based on any specific supplement, and Defendants' evidence shows only that the "current practice" of allowing prayer

in the library and at continuing education classes was effective at
the time they filed the motion under consideration here, not at the
time the Complaint was filed.  (Doc. 19 at 4-6; Doc. 20 at 3.)
Defendants frame their argument in terms of standing: because the
Complaint cited Institution Supplement H and Institution Supplement
I was in place at the time, Plaintiff Roman lacked standing to
bring a claim in that he failed to make the showing necessary to
seek prospective relief.[3]  (Doc. 20 at 18-19.)

"Under Article III, section 2 of the United States
Constitution, federal judicial power extends only to cases or
controversies."  *United States v. Gov't of Virgin Islands*, 363 F.3d
276, 284 (3d Cir. 2004).  In *Friends of the Earth, Inc. v. Laidlaw*
*Environmental Services, Inc.*, 528 U.S. 167, 180 (2000), the Court
noted that  "[t]he Constitution's case-or-controversy limitations

---

[3] Magistrate Judge Schwab did not delve into the distinction
between the operative supplements and did not specifically discuss
standing or mootness.  Her recommendation was not based on these
issues or exhaustion though she noted that Defendants argue that
the only claim administratively exhausted by Plaintiff Roman is
that Policy H prevents him from praying while studying at the
library table and while at his adult continuing education classes,
this claim challenges a prior policy and is, therefore, no longer
accurate, and the current institutional policy, Institution
Supplement SCH 5360,09I ("Policy I"), does not explicitly address
inmate prayer which in the library or at elective education but
FCI-Schuylkill's practice permits inmates to pray in those areas
subject to conditions.  (Doc. 18 at 12-13.)  She also explains that
Plaintiff Roman argues that his administrative remedy was not based
on any specific Institution Supplement but rather on Defendants'
practices, and, even if it had been based on Policy H, he would not
be required to exhaust a new administrative remedy because Policy I
merely summarizes prior policy versions and does not meaningfully
address his grievances.  (*Id.* at 13-14 (citing Doc. 15 at 5-7).)

on federal judicial authority, Art. III, § 2, underpins both our standing and our mootness jurisprudence." Adding that the two inquiries differ in critical respects, the Court first considered standing requirements. *Id.* As set out in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), to satisfy Article III's standing requirements, a plaintiff must show

> (1) that it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

528 U.S. 180-81 (citing *Lujan*, 504 U.S. at 560-61). The plaintiff bears the burden of establishing that he meets these requirements. *See*, *e.g.*, *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012). "When prospective relief is sought, the plaintiff must show that he is likely to suffer future injury." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (2003)). "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

The Court of Appeals for the Third Circuit recently discussed the mootness doctrine in *Delaware Riverkeeper Network v. Sec'y Pennsylvania Dep't of Environmental Protection*, No. 15-2122, No. 15-2158, -—F.3d—-, 2016 WL 4174045, at *6 (3d Cir. Aug. 8, 2016).

22

> Mootness raises both constitutional and prudential concerns.  Under Article III, it is a basic principle that a justiciable case or controversy must remain extant at all stages of review.  Prudentially, a court may decline to exercise discretion to grant declaratory and injunctive relief if a controversy is so attenuated that considerations of prudence and comity counsel withholding relief.  The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.  A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.  When a court can fashion some form of meaningful relief or impose at least one of the remedies enumerated by the appellant, even if it only partially redresses the grievances of the prevailing party, the case is not moot.

2016 WL 4174045, at *6 (internal citations omitted).  In *New Jersey Turnpike Authority v. Jersey Cent. Power and Light*, 772 F.2d 25, 31 (3d Cir. 1985), our Circuit Court observed that "mootness has two aspects: 1) the issues presented are no longer "live" or (2) the parties lack a cognizable interest in the outcome." *Id.* (citing *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980)).  On this basis "'a case becomes moot if (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effect of the alleged violation.'" *Id.* (quoting *Finberg v. Sullivan*, 658 F.2d 93, 97098 (3d Cir. 1980); *Galda v. Bloustein*, 686 F.2d 159, 162-63 (3d Cir. 1982)).

Courts have recognized multiple exceptions to the mootness

23

doctrine, including the voluntary cessation doctrine which provides that, as a general rule, the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). *Friends of the Earth* referred to this principle as "well settled," adding that, if a court were deprived of its power to determine the legality of a practice in such a situation, "the courts would be compelled to leave the defendant free to return to its old ways." 528 U.S. at 189 (internal quotation omitted). The Court further explained that

> [i]n accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)). The "heavy burden of persuad[ing]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Id.*

528 U.S. at 189.

Relevant to this case, one crucial respect in which the standing and mootness doctrines differ is that the plaintiff has the burden to establish standing but the defendant bears the "formidable burden" of showing that its voluntary action moots a case. 528 U.S. at 190. As set out above, from Defendants' perspective Plaintiff bears the burden of showing he has standing

to seek prospective relief because the Complaint was based on alleged RFRA violations in Institution Supplement H and Institution Supplement I was in effect when the Complaint was filed (Doc. 20 at 18-19); from Plaintiff Roman's perspective, Defendants bear the burden of showing that the case is moot because he had standing to bring the case and their claimed "current practice" of allowing prayer in the library and adult continuing education classes occurred after he filed the lawsuit (Doc. 19 at 5-6; Doc. 20 at 3).

A review of the documents filed in this case shows that Plaintiffs averred in the Complaint that since the Prison adopted Institution Supplement SCCH 5360.09F on October 9, 2012,

> [t]he Prison's position on inmate prayer has remained largely consistent, as reflected in the Prison's April 15, 2013, Institution Supplement, SCH 5360.09G . . . and the Prison's Current Prayer Policy.  Under the current prayer policy, and its predecessors, Mr. Roman cannot pray in the Prison library or while taking adult continuing education classes.

(Doc. 1 ¶ 22.)  Though Supplement H was specifically referred to earlier in the Complaint as the operative supplement at the time of filing on November 24, 2015, (Doc. 1 ¶ 2), the alleged consistency of the prayer policy through several supplements cited above (Doc. 1 ¶ 22), which is unrefuted by any evidence presented by Defendants (*see* Reigal Declaration, Doc. 11-1 at 56-57), together with the general nature of the alleged wrongdoing found in the operative administrative remedy (Doc. 11-1 at 59), support the conclusion

25

that Plaintiff Roman based his claim on the substance of the policy
as practiced at FCI-Schuylkill, not uniquely on a particular
supplement.  Because no evidence shows that the November 9, 2015,
Supplement I differed from its predecessors in any meaningful way,
the Court cannot conclude that Plaintiff lacked standing to bring
his library/continuing education class prayer claim based on the
change in operative supplement--a change which took place
approximately two weeks before the case was filed on November 24,
2015.

The next question is whether Defendants' assertion on
February 22, 2016, that their "current practice" allowed inmates to
pray in the library and at continuing education classes with
certain limitations (Doc. 11 ¶ 55) (an assertion which Magistrate
Judge Schwab found "admitted as undisputed" (Doc. 18 at 18)),
affects Plaintiff Roman's standing.  The Complaint refers to
"current procedures" affecting Plaintiff Roman's prayer obligations
and present tense assertions regarding the Prayer Policy's
preclusive effects.  (*See*, *e.g.*, Doc. 1 ¶¶ 3, 26.)  Defendants
proffer no evidence that the practice which was "current" on
February 22, 2016, was operative on November 24, 2015, i.e., they
present no evidence that the practice was in effect at the time
this litigation commenced.  The Declaration of Jennifer Reigel is
dated January 27, 2016, and does not say when the "current
practice" of allowing prayer in the library and at continuing

26

education classes went into effect.  (Doc. 11-1 at 56-58.)  In sum, Plaintiff Roman states in the Complaint that he was unable to pray in the library and at continuing education classes and Defendants do not present evidence that he was able to do so at the time the action commenced.  Absent evidence that the practice was in place when the case was filed, the Court cannot conclude that the "current practice" in effect on January 27, 2014, affected Plaintiff's standing to bring the claim.  Therefore, based on the record before the Court, the Prison's implementation of the practice allowing prayer in the library and at continuing education classes raises the question of mootness rather than standing.

As a question of mootness, the next inquiry is how the voluntary cessation doctrine applies to this case.  Because Defendants argued the issue of standing, they did not discuss their burden of showing that the library/continuing education class prayer claim is moot.[4]  (*See* Doc. 20.)  Thus, Defendants have not attempted to meet the requisite standard: they have not made it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth*, 528 U.S. at 189 (internal quotation omitted).

Although "'government officials are presumed to act in good

---

[4]  Defendants reference the voluntary cessation exception to mootness in two footnotes but they do not discuss their burden of showing mootness or inferentially do so.  (*See* Doc. 20 at 20, nn.3-4.)

faith,'" *Marcavage v. National Park Service*, 666 F.3d 856, 861 (3d Cir. 2012) (quoting *Bridge v. United States Parole Commission*, 981 F.2d 97, 106 (3d Cir. 1992), courts have concluded that government actors must make a showing that they are entitled to such a presumption when they voluntarily cease allegedly unlawful conduct, i.e., it remains the defendant's burden to show the conduct will not recur. *See*, *e.g.*, *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015); *Rosebrook v. Mathis*, 754 F.3d 963, 971 (9th Cir. 2014); *Rich v. Florida Dep't of Corrections*, 716 F.3d 525, 531 (11th Cir. 2013); *Bell v. City of Boise*, 709 F.3d 890, 898-900 (9th Cir. 2013); *National Ass'n of Boards of Pharmacy v. Board of Regents of the University System of Georgia*, 633 F.3d 1297, 1310-11 (11th Cir. 2011); *Beta Upsilon Chi Upsilon Chapter of the Univ. of Florida v. Machen*, 586 F.3d 908, 916-17 (11th Cir. 2009); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009).

   *Rosebrook* set out factors to be considered in determining whether a policy change not reflected in statutory changes or changes in ordinances and regulations renders a case moot, including whether the policy change is evidenced in language that is "broad in scope and unequivocal in tone," noting that the court was "less inclined to find mootness where the new policy could be easily abandoned or altered in the future."  754 F.3d at 971-72. *Rich* and *National Ass'n of Boards of Pharmacy* identified three relevant factors: whether the termination of the offending conduct

28

was unambiguous, whether it was the result of substantial deliberation or simply an attempt to manipulate jurisdiction (which includes the question of whether any basis for the decision was identified), and whether the new policy has been consistently applied for a period of time (noting three years consistent application considered). 716 F.3d at 531-32; 633 F.3d at 1310-11. *McCormack* noted that good faith in a government actor's voluntary cessation of the alleged wrong gives way where "an executive action . . . is not governed by any clear or codified procedures." 788 F.3d at 1025.  *Bell* concluded that even assuming a defendant had no intention of abandoning the new policy, "the ease with which [the defendant] could do so counsels against a finding of mootness." 709 F.3d at 900.  Evidence that the relevant prison official revised the offending policy together with an affidavit from the party responsible for enforcement of a policy were found sufficient in *Sossamon*, 560 F.3d at 325.  Similarly, *Beta Upsilon* found the presumption applied where a policy was modified in writing in a handbook with an affidavit that the defendant fully intended to apply the modified policies going forward.  586 F.3d at 917.

    All of these cases make clear that the government actor must present facts which show its entitlement to the presumption.  As noted above, Defendants here do not do so, asserting that Plaintiff Roman "incorrectly attempts to rely on mootness cases involving a defendant's voluntary cessation of conduct *after* a lawsuit was

filed." (Doc. 20 at 19 (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 630, 635 (1953) (not moot where allegedly unlawful action ceased after complaints were filed)).) The Court cannot apply a presumption of good faith regarding the "current practice" for several reasons: Defendants do not argue they are entitled to it; the change in practice is not a formal written enactment nor was the operative Institution Supplement amended to reflect a change in practice; the supporting declaration does not indicate how or why the "current practice" was adopted or any intent as to its duration; and the practice was changed in close proximity to the commencement of litigation.

In sum, Defendants have not shown that standing is the operative inquiry, the Court concludes that the mootness question is presented given the lack of evidence that the "current practice" relied upon was in place when this action commenced, and Defendants have not shown the issue of library and continuing education class prayer is moot. Therefore, based on the current record, Defendants are not entitled to summary judgment on the issue of library and continuing education class prayer.

3. **Exhaustion**

Defendants raise a separate argument that Plaintiff Roman's claim regarding prayer in the library and at adult continuing education classes cannot proceed because he did not properly exhaust it. (Doc. 20 at 21.) For the reasons discussed in the

context of standing and mootness, the Court concludes this claim was properly exhausted. To reiterate, minimal changes in an Institution Supplement from the time an administrative remedy (which in fact does not rely on a specific supplement) is filed to the time the issue raised in the remedy is included in a complaint filed in court do not render the claim raised in the complaint unexhausted. To conclude otherwise would require an inmate to parse frequently changed supplements for slight alterations in language which do not meaningfully alter the allegedly offending conduct and would allow defendants to avoid responsibility for that conduct by simply issuing a new substantially similar supplement whenever litigation is imminent.

Defendants exhaustion argument regarding the number of inmates who can pray together is also unavailing. Defendants maintain that current FCI policy on the issue of inmates who can pray together differs from the conduct alleged in Plaintiff Roman's administrative remedy in that the remedy contextually suggests that he is referring to the library and "the unrefuted evidence shows that inmates are at least allowed to pray in twos."[5]  (Doc. 20 at

---

[5]  Defendants present no authority to support the proposition that inferences are to be drawn against the inmate filing the grievance. In general, the liberal construction afforded *pro se* filings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), counsels against a narrow construction of administrative remedies, particularly in light of the fact that it is the defendant who must prove that a plaintiff failed to exhaust administrative remedies, *Ray*, 385 F.3d at 295.

22-23.)  As previously discussed, the Court does not read the administrative remedy or the Complaint as narrowly as Defendants. Insofar as Defendants are arguing that the claim is negated by the "current practice" at FCI-Schuylkill, at most they raise the issue of whether the claim is moot and, as previously discussed, they have not shown this to be the case.  Furthermore, the ability of two inmates to pray together does not negate Plaintiff's allegation that three inmates are not allowed to pray together and the congregational prayer requirement of his faith is substantially burdened by prison policies in violation of RFRA.

## C. Plain Error Review

In all respects other than the two issues addressed above, the Court adopts the Report and Recommendation.  Therefore, the only claims going forward are those raised by Plaintiff Roman regarding group prayer and prayer in the library and at continuing education classes.

## III. Conclusion

For the reasons discussed above, the Court adopts the Report and Recommendation (Doc. 18) in part.  Defendants motion is granted in part and denied in part.  Plaintiff Roman's claims regarding group prayer and prayer in the library/at continuing education classes go forward.  An appropriate Order is filed simultaneously with this action.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: September 30, 2016